UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GRAYDON B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**DECISION AND ORDER**

6:25-CV-06148 CDH

## INTRODUCTION

Plaintiff Graydon B. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 5; Dkt. 7; Dkt. 8). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On February 6, 2023, Plaintiff protectively filed an application for DIB. (Dkt. 3 at 19, 98).[1] His application was initially denied on July 10, 2023, and upon reconsideration on October 24, 2023. (*Id*. at 19, 108-16). Plaintiff requested a hearing

---

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

before an administrative law judge ("ALJ") (*id.* at 118-19), which was held on June 27, 2024 (*id.* at 79-90).

On November 13, 2024, the ALJ issued an unfavorable decision. (*Id.* at 16-36). Plaintiff sought review from the Appeals Council, which denied his request on February 12, 2025. (*Id.* at 5-10). This action followed. (Dkt. 1).

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 404.1520(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* § 404.1520(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1520(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* § 404.1509, the ALJ must

determine the claimant's residual functional capacity ("RFC"), *id.* § 404.1520(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 404.1545.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 404.1520(a)(4)(v).

## II. <u>Review by the Court</u>

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (quotation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to

support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ determined that Plaintiff meets the insured status requirements of the Act through September 30, 2028. (Dkt. 3 at 21).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 11, 2023, the amended alleged onset date. (*Id*. at 21-22). The ALJ found at step two that Plaintiff had the severe impairments of "history of injury in the back, history of injury in the knees, and migraine headaches." (*Id.*). The ALJ also concluded that Plaintiff had the following non-severe impairments: history of traumatic brain injury; sleep apnea; hyperlipidemia; plantar fasciitis; irritable colon; tinnitus; "pilonidal cyst status-post excision"; obesity; depressive disorder; and anxiety. (*Id*. at 22-25).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the

Listings. (*Id.* at 25). At step three, the ALJ specifically considered the Listings found in Sections 1.00, *et seq*. (*Id.*).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the additional limitations that Plaintiff:

> can bend and squat on an occasional basis. He can also work at jobs without concentrated exposure to excessive noise, defined as noise in excess of a moderate sound level as defined in the DOT/SCO.

(*Id.*). The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work. (*Id.* at 29).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 30-31). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from February 11, 2023, through the date of the ALJ's decision. (*Id.* at 31).

## II. <u>The Commissioner's Final Determination is Supported by Substantial Evidence and Does Not Contain a Reversible Legal Error</u>

Plaintiff argues that remand of this matter is necessary because: (1) the ALJ erred at step two by failing to find Plaintiff's mental impairments severe, and by failing to incorporate limitations related to Plaintiff's mental health impairments in the RFC finding; and (2) the ALJ improperly rejected certain portions of the opinion of consultative examiner Dr. Harbinder Toor. (Dkt. 5-1 at 1, 10-22). The Court is unpersuaded by these arguments, for the reasons set forth below.

### A. Evaluation of Mental Health Impairments

The step two severity determination "is intended to increase the efficiency and reliability of the disability evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295 (W.D.N.Y. 2016) (alterations and quotation omitted). As noted above, a severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While only "*de minimis* claims" should be screened out at step two, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe," *Taylor,* 32 F. Supp. 3d at 265 (quotations omitted). An impairment is non-severe "if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Howard*, 203 F. Supp. 3d at 296.

When evaluating the severity of mental impairments, an ALJ must apply a "special technique" set forth in the Commissioner's regulations. 20 C.F.R. § 404.1520a(a). "The criteria for this evaluation—usually referred to as the 'paragraph A' and 'paragraph B' criteria—are provided in section 12.00 of the Listings." *Kathryn A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-1392 (SDV), 2023 WL 8596012, at *7 (D. Conn. Dec. 12, 2023) (citation omitted). The ALJ first "evaluates

whether the claimant has a medically determinable mental impairment using the paragraph A criteria." *Id.* If the claimant has such a mental impairment, "the ALJ assesses the claimant's degree of functional limitation in the 'four broad functional areas' described in paragraph B: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id.* With respect to each of these areas, the ALJ then "must rate the degree of limitation in each functional area on a five-point scale: None, mild, moderate, marked, and extreme." *Id.* If there is a rating of "none" or "mild" in each of the functional areas, the mental impairment(s) will generally be found to be non-severe. *Id.*

The ALJ applied the special technique in assessing Plaintiff's mental impairments in this case. The ALJ first concluded that Plaintiff had the medically determinable mental impairments of depressive disorder and anxiety. (Dkt. 3 at 23). The ALJ then applied the paragraph B criteria and concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. (*Id.* at 24). The ALJ determined that Plaintiff's medically determinable mental impairments were non-severe, because they did not cause "more than a minimal limitation in [Plaintiff]'s ability to do basic work activities[.]" (*Id.* at 25).

Plaintiff argues that the ALJ's step two analysis was flawed, because "the evidence in the record demonstrates that Plaintiff would be significantly limited by his mental impairments." (Dkt. 5-1 at 11). In support of this argument, Plaintiff

points to evidence that he claims supports the conclusion that his mental health impairments caused more than mild limitations. But "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*.'" *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (emphasis in original and quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)).

The ALJ cited and relied upon ample evidence in finding Plaintiff's mental health impairments non-severe. As the ALJ explained, three state agency psychiatric consultants concluded that Plaintiff did not have a severe mental health impairment. (Dkt. 3 at 23; *see id.* at 94, 102, 779). Further, "mental status examinations throughout the records indicate[d] unremarkable psychiatric findings." (*Id.* at 23). This is an adequate evidentiary basis for the ALJ's conclusion. The existence of some evidence to the contrary is not a basis to disturb the Commissioner's determination, because it is the ALJ's function to weigh the evidence and resolve any contradictions therein.

Plaintiff's argument regarding the ALJ's assessment of the paragraph B criteria is similarly unavailing. Plaintiff claims that the ALJ "generally cherry-pick[ed] and mischaracterize[ed] evidence while evaluating the paragraph B criteria." (*Id.* at 14). "[A]n allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (quotations and citations omitted). In this case, again, the ALJ's

determination aligned with the opinions of three different state agency psychiatric consultants and was supported by objective medical findings. That there was some evidence to the contrary does not mean that the ALJ engaged in impermissible cherry-picking. And "an ALJ is not required to discuss every shred of evidence in the record." *Jennifer S. v. Comm'r of Soc. Sec.*, 771 F. Supp. 3d 256, 264 (W.D.N.Y. 2025). The ALJ applied the appropriate legal standard in assessing Plaintiff's mental health impairments at step two and reached a conclusion based on substantial evidence.

The ALJ also did not err by failing to include limitations related to Plaintiff's mental health impairments in the RFC finding. "Where an ALJ's assessment of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC." *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) (citation omitted). The ALJ in this case concluded that Plaintiff's mental impairments caused no more than minimal limitations in Plaintiff's ability to do basic work activities. (Dkt. 3 at 25). The ALJ further explained that the "residual functional capacity assessment reflect[ed] the degree of limitation the [ALJ] ha[d] found in the 'paragraph B' mental function analysis." (*Id.*). In assessing Plaintiff's RFC, the ALJ explained that the evidence of record contained "normal and unremarkable psychiatric findings" and referenced the state agency psychiatric consultant opinions. (*Id.* at 28). The Court finds no error in this analysis. *See Grace M.*, 2022 WL 912946, at *3.

**B. <u>Evaluation of Dr. Toor's Opinion</u>**

Plaintiff also argues that the ALJ erred in evaluating the opinion of consultative examiner Dr. Toor. (Dkt. 5-1 at 18). Dr. Toor examined Plaintiff on June 16, 2023. (Dkt. 3 at 706-09). He opined that Plaintiff had mild to moderate limitations for "standing, walking, squatting, bending, lifting, [and] carrying," and "mild limitations sitting a long time." (*Id.* at 708). Dr. Toor also stated that "[h]eadaches can . . . interfere with [Plaintiff's] routine." (*Id.*). The ALJ found Dr. Toor's opinion persuasive, except as to the headache-related limitation. (*Id.* at 28). The ALJ explained that the headache-related limitation was "vague and non-specific and . . . also conjectural as it is preceded by the word 'may,'" and was inconsistent with the rest of the medical evidence of record, particularly because there was no evidence of "any emergency or inpatient treatment for headaches." (*Id.*).

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors and must be discussed in the ALJ's decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

Plaintiff argues that the ALJ "simply made up an explanation that was not there" in assessing Dr. Toor's opinion, because the ALJ incorrectly stated that the headache-related limitation was preceded by the word "may." (Dkt. 5-1 at 20). Plaintiff is correct that the ALJ erroneously said that Dr. Toor had used the word "may" when, in fact, Dr. Toor used the word "can." (*See* Dkt. 3 at 28, 709). But the Court disagrees that this minor semantic error undermines the substance of the ALJ's analysis. The ALJ's conclusion was that the headache-related limitation was vague, non-specific, and conjectural. As to being vague and non-specific, the ALJ was correct. Dr. Toor offered no explanation of how often Plaintiff's headaches would be

expected to interfere with his routine, nor of what form such interference might take. Nor was such information discernible from Dr. Toor's examination. The Second Circuit has expressly held that an ALJ may consider vagueness in assessing a medical opinion. *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (ALJ was "entitled to conclude that [a medical source's] statements were too vague to be of much help in a concrete assessment of [the plaintiff]'s RFC"). Further, the word "can," like the word "may," is reasonably interpreted as connoting a degree of conjecture. In other words, to say that something "can" have a particular impact is not the same as saying that it "will" have such an impact.

The ALJ also reasonably concluded that Dr. Toor's opinion regarding the impact of Plaintiff's headaches was inconsistent with the medical evidence of record. The ALJ noted that Plaintiff's treatment records showed that he had had only one migraine after he was prescribed Topiramate. (Dkt. 3 at 27; *see id.* at 1735). The ALJ also relied on the opinion of state agency reviewing physician Dr. J. Lawrence, who opined that Plaintiff's headaches were appropriately accounted for by limiting exposure to concentrated noise. (*Id.* at 28; *see id.* at 95). The Court finds no reversible error in the ALJ's consideration of Dr. Toor's opinion.

Ultimately, it was Plaintiff's burden to prove a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that he had not done so. There is accordingly no basis for the Court to reverse or otherwise disturb the Commissioner's determination in this matter.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Colleen D. Holland
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: September 28, 2026
Rochester, New York